IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 2014-cv-03328

SALLY RUMPF & LOUIS RUMPF,

      Plaintiffs

v.

SUNLIGHT, INC,

      Defendant

---

## PLAINTIFF'S COMPLAINT

---

Plaintiffs, Sally and Louis Rumpf (collectively the "Rumpfs"), by and through their attorneys, Stromberg Stock, PLLC, for their Complaint against the Defendant, Sunlight, Inc, ("Sunlight") allege as follows:

<u>Parties</u>

1. Plaintiff, Sally Rumpf is an individual who resides at 3452 Brandywine St., San Diego, CA 92117.

2. Plaintiff, Louis Rumpf is an individual who resides at 3452 Brandywine St., San Diego, CA 92117.

3. Defendant, Sunlight is a Colorado corporation in good standing, with a principal street address of 818 Colorado Ave., Glenwood Springs, CO 81601.

Jurisdiction and Venue

4. This Court has jurisdiction over the parties in this case pursuant to 28 U.S.C. § 1332, because Plaintiffs are citizens of California and Sunlight is a Colorado corporation with a principal place of business in Colorado.  In addition the amount in controversy well exceeds the $75,000 threshold required for diversity cases.

5. Venue is proper in United States District Court for the District of Colorado as the occurrence at issue took place in Colorado.

General Allegations

6. At all times relevant to matters described herein, Sunlight was the owner and operator of Sunlight Mountain Resort (hereinafter the "Resort"), located at 10901 County Road 117, Glenwood Springs, CO 81601.

7. Sunlight registered the trade name Sunlight Mountain Resort with the Colorado Secretary of State on November 27, 1996.

8. The Rumpfs are full time residents of San Diego, California and have actively skied the mountains of California and Colorado together for over 14 years.   On December 27, 2012, while visiting her daughter in Glenwood Springs, the Rumpfs spent the day skiing at the Resort.  Mrs. Rumpf is a very active and reasonably athletic woman who, until the time of the accident, enjoyed hiking, cycling, kayaking, skiing, and swimming.  The Rumpfs are capable and responsible skiers who enjoy skiing within their abilities.

9. At approximately 1:30 p.m., after a few hours of skiing, Mr. Rumpf, who was ahead of his wife, stopped at the left side of the "Wait Here Bar" located at the entrance

to lift number 3, a/k/a Segundo Load (hereinafter the "Lift"). Mrs. Rumpf had previously loaded and unloaded on all three ski lifts located at the Resort without issue. Mrs. Rumpf stopped on the hill above her husband to remove her goggles and pole straps before entering the lift maze. As she glided into the Lift maze along side her husband, Sunlight's lift attendant suddenly and forcefully shouted "Go! Go! Go!," in an apparent attempt to keep lift loaded. Obeying Sunlight's negligently shouted instructions, as required by Colorado law, Mrs. Rumpf poled ahead and continued to attempt to load the lift.

10. As the Rumpfs rushed to pole forward following the shouted instructions, Mrs. Rumpf began to board the Lift and started to sit on the 2-person chair. Without enough time to safely position themselves for the on-coming Lift, the center support pole struck Mr. Rumpf in the back of the right shoulder, and struck Mrs. Rumpf on her left shoulder and, possibly, her head. Immediately Mr. Rumpf turned to the right as he was sliding back into the Lift seat and saw Mrs. Rumpf, rotated to the right, hanging lifelessly on the outside of the chair with her right hand while the rest of her body began sliding under the lift. Mr. Rumpf then watched helplessly as the lift dragged his wife up the mountain until her left shoulder caught a packed snow incline under the Lift. It was this second impact that caused Mrs. Rumpf to be ripped from the outside of the chair and fall to the ground. This initial injury sequence was terrifying to both Mr. Rumpf and Mrs. Rumpf, in addition to the painful physical injuries sustained by Mrs. Rumpf.

11. After Mrs. Rumpf fell from the Lift and lay motionless, Sunlight employees thoughtlessly continued to operate and load the Lift for an additional 10-15 seconds

before finally pressing the emergency stop button. Fortunately, the following chair stopped short of hitting Mrs. Rumpf by a short distance, but this was an additionally frightening event to Mr. Rumpf who believed his wife would be struck by the next lift chair while she lay motionless on the ground. Mr. Rumpf, who was now on the lift approximately 5-6 feet above the snow, continued to look backward seeing Mrs. Rumpf lying on her left side on the ground - still not moving. Mr. Rumpf shouted, "Are you all right?" but Mrs. Rumpf did not respond. Becoming more worried about his injured wife, Mr. Rumpf again shouted her name, but she still did not respond.

12. Eventually, the lift operator who provided the Rumpfs with the negligent instructions approached the still motionless Mrs. Rumpf, bent over, put his arms under her shoulders and tried to drag her up and over toward the lift operation building. This unadvised move exacerbated her injuries and caused Mrs. Rumpf to scream in pain. Immediately, Mr. Rumpf cried out to the Sunlight employee, pleading with him not to move his injured wife until help arrived. Disregarding Mr. Rumpf's pleas to the contrary, the lift operator then reached lower around Mrs. Rumpf's torso and again tried to pull her out of the way in an apparent attempt to restart the Lift and relieve the ever increasing line of guests waiting to enter the maze. Mrs. Rumpf again moaned in pain. At this point in time, Mrs. Rumpf told the lift operator that she had serious neck pain and could not move her body or arms for several seconds.

13. A short time later, a female Resort employee told the male lift attendant not to move Mrs. Rumpf. Mrs. Rumpf was finally moved from beneath the Lift by Ski Patrol. The Patrolman attending Mrs. Rumpf was quick to immobilize her shoulder, get

an ambulance, and transport her to the First Aid clinic. Once she reached the clinic, Mrs. Rumpf was diagnosed with a dislocated left shoulder and was treated for pain, which she described as "8 and beyond" when the shoulder moved.

14. Mrs. Rumpf was transferred by ambulance from the clinic to the hospital where it was determined she had suffered a fracture of the lower scapula, most likely from the impact of the pole on the back of her shoulder, and a fracture of the glenoid cavity of the upper scapula, most likely from the fall onto the snow below the lift. Mrs. Rumpf continued treatment for the injury at her home in San Diego under the care and supervision of various medical professionals.

15. Mrs. Rumpf suffered severe injuries as a result of her fall from the Lift. The dragging and subsequent impact caused extensive and permanent damage to her shoulder. Additionally, she suffered and still suffers from dizziness and constant severe pain. The injuries and accompanying nerve damage have caused Mrs. Rumpf weakness and a potentially permanent loss of mobility in her left arm.  The damage to her arm has forced Mrs. Rumpf to seek help from numerous medical professionals.

16. The actions of Sunlight it's agents and employees constitute multiple breaches of duties that Sunlight owes to the Rumpfs.

17. As a direct and proximate result of the Sunlight's unlawful conduct, Mrs. Rumpf will seek recovery for any economic losses or injuries which Mrs. Rumpf has had to the present time or which Mrs. Rumpf will probably have in the future, including loss of earnings or damage to her ability to earn money in the future (currently valued at approximately $16,000), reasonable and necessary medical, hospital, and other

expenses (currently valued at approximately $77,000), and physical impairment and disfigurement in an amount to be proven at trial.

18. Additionally, Mrs. Rumpf has incurred, and will continue to incur, non economic damages including but not limited to claims for physical and mental pain and suffering, inconvenience, emotional stress, and impairment of the quality of life in amount to be proven at trial.

19. As a direct and proximate result of the Sunlight's unlawful conduct, Mr. Rumpf will seek recovery for any noneconomic damages in the form of loss of affection, society, companionship, and aid and comfort of the injured spouse, and economic damages for loss of household services the injured spouse would have performed and any resulting expenses which plaintiff has had or which plaintiff will have in the future in an amount to be proven at trial.

20. All conditions precedent to recovery, if any, have been satisfied.

<u>FIRST CLAIM FOR RELIEF</u>
(Negligence)

21. Paragraphs 1 through 18 are incorporated by reference as if fully set forth herein.

22. Sunlight is the owner and operator of the Lift at the Resort.

23. In Colorado, a ski lift operator must exercise the highest degree of care commensurate with the lift's practical operation, regardless of the season.

24. Sunlight breached its duty of care to the Rumpfs by failing to properly operate its ski lift and by failing to properly instruct the Rumpfs at the ski lift loading area.

25. As a direct and proximate result of Sunlight's breaches of its duty of care, the Rumpfs have been damaged and suffered injuries, damages, and losses in an amount to be proven at trial.

SECOND CLAIM FOR RELIEF
(Negligence *Per Se*)

26. Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

27. The Ski Safety Act of 1979 ("SSA"), imposes duties upon tramway passengers, including the admonition that a passenger is "required to follow any written or verbal instructions that are given to him regarding the use of the passenger tramway."  Col. Rev. Stat. § 33-44-105(1).

28. Additionally, the Tramway Act makes clear that the "primary responsibility for design, construction, maintenance, operation, and inspection rests with the area operators of passenger tramway devices."  Col. Rev. Stat. § 25-5-705.

29. Sunlight's employees violated the SSA by providing negligent verbal instructions that directed Mrs. Rumpf to attempt to board the lift when the loading area was not yet clear or when the Rumpfs were not yet in a position to safely load onto the moving lift chairs.  Sunlight also failed to meet other general duties as enumerated by the SSA and Tramway Act.

30. Sunlight's violation of the SSA and Tramway Act damaged the Rumpfs in an amount to be proven at trial.

31. One of the purposes of both the SSA and Tramway Act is to protect against the type of damages sustained by the Rumpfs.

32. The Rumpfs are members of the group of persons the SSA and Tramway Act were intended to protect.

33. Sunlight's violation of the SSA and Tramway Act constitutes negligence *per se*. COL. REV. STAT. § 33-44-104.

THIRD CLAIM FOR RELIEF
(Loss of Consortium)

34. Paragraphs 1 through 31 are incorporated by reference as if fully set forth herein.

35. As a result of the injuries sustained to his wife, Plaintiff Louis Rumpf sustained noneconoecfmic damages in the form of loss of affection, society, companionship, and aid and comfort of his wife, as well as economic damages for loss of household services that his wife performed in an amount to be proven at trial.

WHEREFORE, the Rumpfs pray for Judgment in their favor and against Sunlight for compensatory damages in an amount that will fully compensate them for all of their injuries, damages and losses; reasonable attorney fees and costs; interest on such sums as is provided by law; and such other and further relief as this Court deems proper.

**PLAINTIFFS REQUESTS A TRIAL BY JURY ON ALL ISSUES**

DATED this 9th day of December, 2014.

Respectfully Submitted,

STROMBERG STOCK, PLLC

Aric Stock
Michael G. Brownlee
STROMBERG STOCK, PLLC

8750 North Central Expy, Suite 625
Dallas, Texas 75231
Telephone: (972) 458-5353
Facsimile:   (972) 861-5339
Email: michael@strombergstock.com

*Attorneys for Plaintiffs, Sally and Louis Rumpf*